**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| JAMES D. SHORT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 1:11-cv-01581-TWP-MJD |
| MICHAEL J. ASTRUE, | ) | |
| | ) | |
| Defendant. | ) | |

## ENTRY ON JUDICIAL REVIEW

Plaintiff, James D. Short ("Mr. Short"), requests judicial review of the final decision of the Commissioner of the Social Security Administrator ("the Commissioner"), denying his application for Disability Insurance Benefits ("DIB") and Supplemental Insurance Benefits ("SSI") under Titles II and XVI of the Social Security Act ("the Act"). For the following reasons, the Court **AFFIRMS** the Commissioner's decision.

## I.    BACKGROUND

**A.    Procedural History**

Mr. Short filed his applications for DIB and SSI on April 16, 2007, alleging a disability onset date of August 21, 2003. His claims were initially denied on June 26, 2007, and upon reconsideration on October 1, 2007. Thereafter, Mr. Short requested a hearing, which was held on October 28, 2009 and April 29, 2010, before Administrative Law Judge James R. Norris ("the ALJ"). On July 8, 2010, the ALJ denied Mr. Short's applications, and on October 22, 2011, the Appeals Council affirmed the ALJ's denial, thus making it the final decision of the Commissioner for the purposes of judicial review. 20 C.F.R § 416.1481. On November 29,

2011, Mr. Short filed this appeal requesting judicial review pursuant to 42 U.S.C. § 405(g) and 1383(c)(3).

**B.      Factual and Medical Background**

Mr. Short was born in December 1968 and at the time of the ALJ's decision, was forty-one years old and had obtained a high school equivalency diploma (GED).  His past work experience included assistant managing chef, certified trainer in food preparation, cleaner, and gas station attendant.  Mr. Short says he stopped working because he suffers from chronic pain due to his multiple medical conditions.

Regarding his physical limitations, Mr. Short testified his stomach is in constant pain. The pain causes him to frequently shift his position while standing to help ease the discomfort. He said he is not on his feet more than an hour at a time, and he finds walking to be easier than standing. He is able to walk one to two blocks at a time.  Mr. Short stated sitting bothers him as well, so he twists from side to side.  Along with his stomach pain, he also suffers from both back and knee pain.

Mr. Short testified he is most comfortable at home and takes a nap once his children have left for the day.  He is unable to do yard work and does not do the dishes.  He washes and dries his own clothes and is able to lift the laundry basket.  He leaves his house every day to pick up his three-year-old daughter and drives his other child to school.  Mr. Short's wife testified that Mr. Short struggles with getting up and out of a chair, and she has to repeat instructions due to his poor memory.  She said that when she returns home from work Mr. Short is sometimes cooking dinner as he enjoys cooking, though most of the time he is watching TV.   She then stated they visit his family on occasion, and Mr. Short enjoys going on trips to the grocery store.

Mr. Short's medical records show a history of hypertension, asthma, recurrent ventral hernias, repaired abdominal hernias, a history of chronic back pain, knee pain, and a Leydig cell

tumor of the testicle. On November 2, 2006, Mr. Short's treating physician, Dr. Wa'el Bakdash ("Dr. Bakdash"), performed a consultative examination of Mr. Short. On examination, the doctor reported unremarkable findings except for Mr. Short's blood pressure of 150/84 and ventral abdominal hernias. On April 19, 2007, Dr. Bakdash stated Mr. Short was seen by two surgeons for his ventral hernias, but no surgical option was recommended due to his past surgical complications. Instead, Mr. Short continued to use pain medication to treat his symptoms.

Mr. Short continued to have abominable pain, and visited Dr. Bakdash multiple times in 2009. On July 16, 2009, Dr. Bakdash found Mr. Short was not in acute distress and reported unremarkable findings. Mr. Short was continued on his medication regimen for the chronic pain he felt in his abdomen, including Fentanyl patches, Neurontin, Elavil, Mobic, and Bentyl.

Mr. Short was also seen by Dr. Dwight McCury ("Dr. McCury") on May 20, 2009, for pain in his groin. Dr. McCury stated he did not feel any hernia present and suspected the pain was a nerve related to one of Mr. Short's prior surgeries. Dr. McCury did find multiple incisional hernias, but determined surgery carried too high a risk because the incisional hernias did not pose any complications.

Along with physical problems, Mr. Short has a history of mental health issues as well. On May 2, 2007, Comprehensive Mental Health Services diagnosed Mr. Short with bipolar disorder. Mr. Short had reported his mood overall was down, and he had feelings of high anxiety. He also reported having issues with sleep disturbance and requested something to help him sleep.

On June 12, 2007, Mr. Short underwent a consultative psychological review with Dr. Robert Fischer. Mr. Short stated he was depressed because of family problems. He said he was in constant stress due to his physical limitations and not being able to work. His sleep and

appetite varied, and he worried about the future constantly.  Mr. Short also stated he used marijuana because it helped with his pain, but he was trying to reduce his usage.  Mr. Short was diagnosed with major depressive disorder, general anxiety, and polysubstance dependence for nicotine and marijuana.

On May 22, 2009, Dr. Bakdash performed a medical assessment of Mr. Short's ability to do work-related activities for Mr. Short's disability hearing.  Due to his abdominal and hernia pain, Dr. Bakdash determined Mr. Short was able to lift ten pounds occasionally, sit two hours during an eight hour workday, stand one hour during an eight hour workday, and walk two hours during an eight hour workday.  Despite his pain, Dr. Bakdash found Mr. Short could climb, stoop, crouch, kneel occasionally, and balance frequently.  Also, Mr. Short's hands and feet were not affected by his pain.  Dr. Bakdash did find Mr. Short was unable to crawl, work at unprotected heights, come into contact with moderate exposure to dust, work with temperature extremes and fumes, and he could not work in an area with concentrated exposure to moving machinery.  With his findings, Dr. Bakdash opined Mr. Short's residual functional capacity ("RFC"), which is a claimant's ability to do work on a regular and continuing basis despite his impairment-related physical and mental limitations, to be less than sedentary work.

At a hearing on October 28, 2009, Dr. Lee Fischer ("Dr. L. Fischer") was called as a state medical witness to testify about Mr. Short's medical condition.  Dr. L. Fischer testified Mr. Short's impairments did not meet or medically equal a statutory Listing of impairment ("Listing") level.  Dr. L. Fischer found the lifting restriction given by Dr. Bakdash was "overly restrictive" due to the lack of objective evidence.  Dr. L. Fischer also determined the medical evidence did not support a limitation on sitting for only two hours, standing for one hour, and walking two hours.  In his assessment, Dr. L. Fischer limited Mr. Short's RFC to light work with

the additional limitations of climbing ramps and stairs occasionally, no ropes or scaffolds, no crawling, no fumes or gases, and no work near dangerous machinery.

As for Mr. Short's mental health, Dr. Don Olive ("Dr. Olive"), who testified as a state medical witness, determined Mr. Short's mood shifts were not a chronic problem, and his cognitive functioning was within normal limits. Dr. Olive noted that Mr. Short had only one mental status examination from 2007. As a result, the ALJ decided to send Mr. Short for a new consultative psychiatric examination and the case was held open.

On December 5, 2009, Mr. Short underwent a consultative psychiatric examination by Dr. Aldo Buonanno ("Dr. Buonanno"). The examination of Mr. Short's mental status demonstrated that his mood was depressed because of his physical problems and the things he could not do. Mr. Short had trouble falling and staying asleep, but he did not have any suicidal or homicidal thoughts. Dr. Buonanno diagnosed Mr. Short with a mood disorder, and he assigned Mr. Short a global assessment of functioning ("GAF") score of 55, which is a measure of an individual's psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness. Dr. Buonanno found Mr. Short's ability to understand, carry out, and make judgments on complex work-related decisions was markedly limited, and his ability to understand, carry out, and make judgments on simple work related decisions was moderately limited.

After Mr. Short's mental examination was complete, a second hearing was held on April 29, 2010. Dr. Mark Farber ("Dr. Farber") testified as a medical expert for the State and found Mr. Short's physical limitations did not meet a Listing level. Dr. Farber noted Dr. Bakdash's recommendations and found Mr. Short's RFC should be limited to sedentary work. Dr. Farber determined Mr. Short could lift up to ten pounds, sit six hours during an eight hour workday, and

stand/walk for two hours during an eight hour workday.  According to Dr. Farber, Mr. Short was limited to occasional kneeling, bending, crawling, and no climbing of ropes and ladders or working at heights.  Mr. Short also could not work in areas with fumes and high dust concentrations.

Regarding Mr. Short's mental health, Dr. Jack Thomas ("Dr. Thomas") was called as a state medical witness to evaluate Dr. Buonanno's psychiatric examination of Mr. Short.  In his testimony, Dr. Thomas did think Mr. Short should be limited to perform only simple and repetitive tasks, but also said he could find no severe mental impairment.  Dr. Thomas also thought several of the mental limitations found by Dr. Buonanno were excessive including having marked difficulty to understand complex instructions.

**C.**     **The ALJ's Decision**

The ALJ made the following findings as part of his decision.  Mr. Short last met the insured status requirements of the Act on December 31, 2008.  Mr. Short did not engage in substantial gainful activity during the period from his alleged onset date of August 21, 2003, through his date last insured on December 31, 2008.  The ALJ determined Mr. Short has the following severe impairments:  disorders of the back, asthma, high blood pressure, abdominal pain, and Leydig cell tumor of the testicle.  He found these impairments significantly limit Mr. Short's ability to perform basic work activities.  As for Mr. Short's mental health, the ALJ determined Mr. Short's mental impairment of depression does not cause more than a minimal limitation in his ability to perform basic mental work activities and is, therefore, non-severe.  The ALJ then determined Mr. Short does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in the regulations.

After determining Mr. Short's impairments do not satisfy a Listing level, the ALJ determined Mr. Short has the RFC to perform sedentary work.   He concluded Mr. Short has the ability to lift and carry ten pounds occasionally and five pounds frequently, he has the ability to stand/walk for two hours during an eight hour workday, and he has the ability to sit six hours during an eight hour workday.   The ALJ also found Mr. Short should avoid ladders, ropes and scaffolds, not work at unprotected heights, and he should crouch and crawl only occasionally. Finally, he determined Mr. Short could not work with concentrated exposure to fumes, high dust, and any respiratory irritants.   Based on these restrictions, the ALJ found Mr. Short could perform a significant number of jobs that exist in the national economy and therefore concluded Mr. Short was not disabled.

## II.   DISABILITY STANDARD OF REVIEW

Under the Act, a claimant is entitled to DIB or SSI if he establishes he has a disability. Disability means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months."   42 U.S.C. §§ 416(i)(1), 423(d)(1)(A), 1382c(a)(3)(A).   The Social Security Administration ("SSA") has implemented these statutory standards in part by prescribing a "five-step sequential evaluation process" for determining disability.   20 C.F.R. §§ 404.1520, 416.924.   If disability status can be determined at any step in the sequence, an application will not be reviewed further.   20 C.F.R. §§ 404.1520, 416.924.

At the first step, if the claimant is currently engaged in substantial gainful activity, then he is not disabled.   At the second step, if the claimant's impairments are not severe, then he is not disabled.   A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities."   20 C.F.R. §§ 404.1520(c), 416.924(c).   Third, if the

7

claimant's impairments, either singly or in combination, meet or equal the criteria for any of the conditions included in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listing of Impairments"), then the claimant is deemed disabled.   The Listing of Impairments are medical conditions defined by criteria that the SSA has pre-determined are disabling.  20 C.F.R. § 404.1525.  If the claimant's impairments do not satisfy a Listing, then his RFC will be determined for the purposes of the next two steps.   At the fourth step, if the claimant has the RFC to perform his past relevant work, then he is not disabled.   Fifth, considering the claimant's age, work experience, and education (which are not considered at step four), and his RFC, he will not be determined to be disabled if he can perform any other work in the relevant economy.

A person will be determined to be disabled only if his impairments "are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).  The combined effect of all of a claimant's impairments shall be considered throughout the disability determination process.  42 USC §§ 423(d)(2)(B), 1382a(a)(3) (G).  The burden of proof is on the claimant for the first four steps; it then shifts to the Commissioner at the fifth step.  *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992).

Section 405(g) of the Act grants the court "the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  The court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005)

(citation omitted).  The Commissioner's decision will be reversed only if it is not supported by substantial evidence or if the ALJ applied an erroneous legal standard.  *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

In evaluating the decision, the court's "role is extremely limited."  *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).  To determine whether substantial evidence exists, the court will not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner."  *Clifford*, 227 F.3d at 869.  If the findings of the Commissioner are supported by substantial evidence, they are conclusive.  *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003).

## III.  DISCUSSION

Mr. Short makes three arguments on appeal.  First, he argues that the ALJ committed reversible error in failing to comply with SSR 96-7p and 20 C.F.R. § 404.1529 when evaluating his subjective complaints.  Second, he argues the ALJ failed to give adequate weight to the opinion of his treating physician as required by 20 C.F.R. § 404.1527.  Finally, he argues the ALJ committed reversible error in failing to properly evaluate his RFC as required by SSR 96-8p.

### A.    The ALJ's Credibility Determination

To begin, Mr. Short argues that the ALJ conducted a flawed credibility determination. An ALJ's credibility determination will not be overturned unless it is "patently wrong."  *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000).  However, the ALJ's credibility decision is not only an analysis of Mr. Short's credibility, but also an evaluation of his complaints of pain. Therefore, the ALJ must consider SSR 96–7p, the regulation promulgated by the Commissioner to assess and report credibility issues, as well as 20 C.F.R. § 404.1529(c)(3).

9

SSR 96–7p states there is a two-step process that the ALJ engages in when determining an individual's credibility.  The first step requires the ALJ to consider whether the claimant has any medically determinable physical or mental impairments that could reasonably be expected to produce the type of pain or symptoms the claimant allegedly suffers from.  SSR 96-7p.  At this step, the ALJ's finding does not "involve a determination as to the intensity, persistence, or functionally limiting effects of the individual's symptoms." *Id*.

If the ALJ does find there is a physical or mental impairment that could reasonably be expected to produce the pain or symptoms the claimant alleges, he must then determine the extent to which the symptoms limit the individual's ability to do basic work activities. *Id*. "For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." *Id*.

SSR 96–7p further provides that the ALJ's decision regarding the claimant's credibility "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.*

Moreover, 20 C.F.R. § 404.1529(c)(3) states that when a claimant's subjective individual symptoms, such as pain, are considered, several factors are relevant, including: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has

taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.  20 C.F.R. § 404.1529(c)(3)(i)-(vii).

In consideration of the evidence, the ALJ found Mr. Short's medically determinable impairments could possibly be expected to cause his alleged symptoms, but his statements concerning the intensity, persistence, and limiting effects of the symptoms were not credible to the extent they were inconsistent with his residual functional capacity ("RFC") assessment. After a careful examination of the record, the Court concludes that the ALJ's credibility determination was not patently wrong.

Mr. Short argues the ALJ erred when he noted the fact that Mr. Short has not received the general type of medical treatment one would expect for a totally disabled individual as a determining factor in his assessment.  Mr. Short claims the ALJ's statement ignores findings in the record that show a variety of treatments Mr. Short has undergone including surgery, pain management, and regular general treatment in order to deal with his physical pain.  The record shows, however, that the ALJ did consider the various forms of treatments Mr. Short has received for his pain.   Specifically, the ALJ noted Mr. Short has received various forms of treatment for his allegedly disabling symptoms, which would normally weigh in his favor, but the record also reveals the treatment has been generally successful in controlling those symptoms.  The ALJ found the record to show the pain medication Mr. Short received was a suitable treatment for his pain instead of a surgery, noting Mr. Short's testimony that his pain is an 8/10 without his medication, but a 4/10 with it.  Furthermore, the ALJ determined there was

no medical evidence to support Mr. Short's claim the pain medication made his head "feel foggy" and the records of Mr. Short's doctors did not reflect his having complained to them that the medication made him foggy.  Therefore, the ALJ did not err when making his determination.

Mr. Short also argues the ALJ's credibility determination relies on the ALJ's observation that Mr. Short was able to sit during his trial without displaying any outward manifestation of pain, and that observation does not prove Mr. Short's claim to be unable to perform sedentary work as inconsistent.  The Seventh Circuit has long held that observations by the ALJ are an important consideration for their credibility assessment.  *See Powers*, 207 F.3d at 436.  The ALJ's credibility determination would be problematic had he relied solely on his observation to make his assessment; however, the record shows the ALJ considered many different factors when making his assessment.  In his credibility determination, the ALJ considered Mr. Short's claim that his daily activities, or lack thereof, as strong evidence in favor of finding him to be disabled.  Ultimately, the ALJ rejected Mr. Short's claim because Mr. Short's alleged daily activities could not be objectively verified with any reasonable degree of certainty.

Also, the ALJ found even if Mr. Short's daily activities were as truly limited as alleged, it would be difficult to attribute the degree of limitation to Mr. Short's medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other activities reported by Mr. Short including washing and drying his clothes, cooking dinner, picking up groceries, visiting his family, and driving his daughters to and from school.  Furthermore, the ALJ considered Mr. Short's medical history and the types of treatment he received, along with the different physicians' testimonies.  Finally, the ALJ determined there was no credible evidence that Mr. Short's alleged limitations were the most he could do, as opposed to the least, which was necessary for his claim.

Therefore, after careful review, the record shows the ALJ relied on all of the evidence available and considered numerous factors when making his credibility determination. Therefore, the ALJ's decision was not patently wrong.

**B.     Weight Given to Treating Physicians**

Next, Mr. Short argues that the ALJ should have given more weight to the opinions of his treating physicians, Dr. Bakdash and Dr. Buonanno, rather than the opinions of state agency physicians.  Opinions of a treating physician are generally entitled to controlling weight.  20 C.F.R. § 404.1527; *Clifford*, 227 F.3d at 870.  However, an ALJ may reject the opinion of a treating physician if it is based on a claimant's exaggerated subjective allegations, is internally inconsistent, or is inconsistent with other medical evidence in the record.  *Dixon v. Massanari*, 270 F.3d 1171, 1177–78 (7th Cir. 2001).

For his physical limitations, Mr. Short argues the ALJ adopted the opinion of state agency physician Dr. Farber and did not evaluate Dr. Bakdash's (his treating physician) opinion in terms of the length and frequency of treatment and the nature of the treatment relationship as required 20 C.F.R. § 404.1527.  While section 404.1527 does state the ALJ shall consider the length and frequency of treatment and the nature of the treatment relationship, it also lists a number of other factors the ALJ shall consider in applying medical opinions.  The factors include the supportability of the medical sources, the consistency of the medical opinions, the specialization of the physician, and any other factors presented to the ALJ by the complainant. Furthermore, section 404.1527 also says a treating source's opinion as to the nature and severity of a claimant's impairments is entitled to controlling weight only if it is well-supported by medically acceptable clinical laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record.  20 C.F.R. § 404.1527(d)(2).

The record shows that both Dr. L. Fischer and Dr. Faber found Mr. Short's physical condition to not meet a Listing level and that Dr. Bakdash's medical opinion was overly restrictive and not supported by evidence in the medical record.  While the ALJ did not adopt the medical opinion of Dr. Bakdash, he did find Mr. Short could only perform sedentary work, instead of light work as opined by Dr. L. Fischer.  Furthermore, he did adopt several limitations called for by Dr. Bakdash on the type of sedentary work Mr. Short could perform.  These limitations included not working at unprotected heights, not working in areas with high dust concentration, not working with any concentrated exposure to fumes, and the limitation that Mr. Short can only walk/stand for two hours during an eight hour work day.  Therefore, based on the medical evidence presented, the weight given to Mr. Short's treating physician's opinion by the ALJ was appropriate.

As for his mental limitations, Mr. Short argues the ALJ erred in giving more weight to the opinion of state agency physician Dr. Thomas rather than his treating physician, Dr. Buonanno. Mr. Short claims Dr. Thomas is a medical expert, and neither a treating nor examining physician and, therefore, his opinion deserves less weight than that of Dr. Buonanno. Mr. Short also argues the ALJ's rationale is flawed because he directed Mr. Short to undergo an independent physiatrist evaluation, which was performed by Dr. Buonanno, and then went on to reject Dr. Buonanno's findings from that evaluation.  Mr. Short offers no evidence to support these claims.

According to Dr. Thomas, Dr. Buonanno's findings seemed excessive for a disorder that is basically a reactive disorder to a physical impairment, and the evidence in the record did not support any finding that Mr. Short suffered from a mental impairment prior to his date last insured.  Specifically, Dr. Thomas found Dr. Buonanno's opinion was internally inconsistent

because he assigned Mr. Short a GAF score of 55, which would indicate only moderate limitations, yet Dr. Buonanno still found Mr. Short to have several marked limitations. Furthermore, Dr. Thomas pointed out it would be almost impossible for Dr. Buonanno to find Mr. Short had a severe mental impairment based on a mood disorder because his opinion was based on only one examination. Dr. Thomas explained that a mood disorder is a highly reactive disorder, and unlike many other types of mental impairments, it does not have a set criteria of syndromes a doctor can look to when trying to make a mental impairment consideration. Instead, a doctor needs to monitor an individual's behavior over a period of time to determine whether they have a mood disorder that meets the criteria necessary to be considered a severe mental impairment. Therefore, Dr. Thomas determined that Dr. Buonanno's finding that Mr. Short had a severe mental impairment based on a mood disorder after only one examination was inconsistent. Dr. Thomas then stated the medical evidence did not support a finding Mr. Short suffered from a mood disorder which could be considered a severe impairment. Agreeing with Dr. Thomas, the ALJ found that Mr. Short did not have severe mental impairment.

Based on the inconsistent medical evidence presented by Dr. Buonanno and the ALJ's determination that evidence in the record did not support a finding that Mr. Short suffered from a severe mental impairment, the Court finds the ALJ properly did not grant controlling weight to Dr. Buonanno's opinion.

**C.    The ALJ's RFC Determination**

Finally, Mr. Short argues the ALJ's RFC determination was wrong because it did not take into account all of the evidence in his file, including Mr. Short's symptoms. In light of the totality of the objective medical evidence, as well as the opinions of the state agency physicians, the ALJ's RFC determination was reasonable. The ALJ took into consideration Mr. Short's

impairments and limited him to a reduced range of sedentary work even though the state physician, Dr. L. Fischer, found Mr. Short could perform light work.  These considerations included those made by Mr. Short's treating physician, Dr. Bakdash, in agreeing to certain limitations in the types of sedentary work Mr. Short could perform including avoiding ladders, ropes and scaffolds, not working at unprotected heights, crawling only occasionally, and no work with concentrated exposure to fumes, high dust, and any respiratory irritants.  Based on these limitations, the ALJ determined Mr. Short could perform a significant number of jobs in the national economy.  Therefore, the RFC found by the ALJ is supported by substantial evidence and must be affirmed.

## IV.     CONCLUSION

For the reasons discussed above, the Court **AFFIRMS** the Commissioner's decision denying benefits.  Mr. Short's appeal is **DENIED**.

**SO ORDERED.**

Date: 03/11/2013

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Thomas C. Newlin, II
FLESCHNER STARK TANOOS & NEWLIN
kduzan@fleschnerlaw.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov